IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 30, 2001

## KENNETH MacARTHUR JOHNSON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Hawkins County**
**No. 7775      James E. Beckner, Judge**

**No. E2001-00068-CCA-R3-PC**
**December 18, 2001**

Aggrieved of his second degree murder conviction, the petitioner seeks post-conviction relief, which was denied by the lower court after an evidentiary hearing. On appeal, the petitioner presents several issues of the ineffective assistance of counsel. We affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which DAVID G. HAYES and JOHN EVERETT WILLIAMS, JJ., joined.

R. Russell Mattocks, District Public Defender, for the Appellant, Kenneth MacArthur Johnson.

Paul G. Summers, Attorney General & Reporter; Angele M. Gregory, Assistant Attorney General; C. Berkeley Bell, Jr., District Attorney General; and Doug Godbee, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

Following a jury trial in the Hawkins County Criminal Court, the petitioner, Kenneth MacArthur Johnson, was convicted of the second degree murder of his wife, Phyllis Johnson. His conviction and 25-year sentence were affirmed on appeal. *See State v. Kenneth MacArthur Johnson*, No. 03C01-9901-CR-00009 (Tenn. Crim. App., Knoxville, Nov. 12, 1999), *perm. app. denied* (Tenn. 2000). The petitioner then filed a timely petition for post-conviction relief, which the trial court denied after an evidentiary hearing. On appeal of the denial of his petition, the petitioner raises the following issues of the ineffective assistance of trial and appellate counsel:

1. Trial counsel's lack of preparation, including:
   a. trial counsel's failure to interview possible defense witnesses,
   b. the failure to file pretrial motions,
   c. the failure of the petitioner's original trial counsel to
      prepare the case due to his being distracted by his

political campaign for the office of county executive, and

   d.  the failure of counsel to meet with and advise the
       petitioner;

2.  Trial counsel's failure to object to playing a tape of a 911 call to the jury and
    appellate counsel's failure to take steps to assure appellate review of
    the 911 tape issue;

3.  Trial counsel's failure to object to the testimony of a Tennessee
    Bureau of Investigation (TBI) agent who, during his testimony, revealed
    the results of a previously undisclosed gunshot residue test;

4.  Trial counsel's failure to object to, and preserve for appeal, instances of prosecutorial
    misconduct, including:
    a.  the state's use of the TBI report, and
    b.  The state's final argument of points not based on the evidence;

5.  Trial counsel's failure to raise certain issues in a timely motion for new trial and otherwise
    to preserve issues for appellate review.

Because the post-conviction court's denial of relief is supported in the record, we affirm that court's judgment.

## I.  Background.

### A.  The Petitioner's Trial.[1]

On October 31, 1997, in the sitting room of the marital home, the petitioner fatally shot his wife of 28 years during or following an argument. Although their adult son, Allen, was on the premises, there were no witnesses to the shooting. After the shooting, the petitioner called for Allen and asked him to talk to the 911 operator who was on the kitchen telephone. As Allen passed through the sitting room and discovered that his mother had an abdominal gunshot wound, he heard her say, "He shot me." *Kenneth MacArthur Johnson*, slip op. at 4. While waiting for help to arrive, Allen overheard his parents conversing. The petitioner said, "Chub, I love you, and I didn't mean to do it." The victim replied, "I know you didn't." *Id.*

The victim died after medical personnel arrived. Later, the petitioner gave a statement to the police in which he said that he was leaving home to get a beer, and as he was picking up a pistol to take with him, his wife grabbed his arm and caused the gun to discharge. *Id.* The petitioner likewise maintained at trial that the shooting was an accident, although he testified that he could not remember the events immediately following the shooting.

---

[1]Although the following synopsis of the trial testimony was extracted from our direct appeal opinion, we have also examined the transcript of the trial proceedings archived with the direct appeal record in this court. *See, e.g., State ex rel. Wilkerson v. Bomar*, 213 Tenn. 499, 505, 376 S.W.2d 451, 453 (1964) (court may take notice of its records in an earlier proceeding in the same case). The petitioner failed to make the trial transcript an exhibit at the evidentiary hearing.

At trial, the petitioner's former daughter-in-law, Crystal Murdock, testified that she went to the petitioner's and the victim's home in 1996 after hearing them argue during a telephone call. After arriving at the home, she saw the petitioner with a pistol and heard him tell the victim that he would kill her unless she stopped accusing him of seeing another woman. *Id.*, slip op. at 2-3.

Deborah Heck testified at the petitioner's trial that she was the victim's best friend and that, in August 1997, the petitioner consulted with Heck about his marital problems. During the conversation, the petitioner asked rhetorically if it would not be better for everyone if he killed his wife. *Id.*, slip op. at 3. Heck further testified that four days before the shooting, the victim, in an upset and agitated state, called Heck and said that the petitioner the previous evening had threatened to kill the victim and had pointed a gun at her head. *Id.*

### B. The Direct Appeal from the Petitioner's Conviction.

On direct appeal of the conviction and sentence, this court not only found the convicting evidence to be sufficient and the sentence to be supported by the record, but we also addressed a number of other issues. We considered whether the trial court had violated the hearsay rule in allowing Deborah Heck to testify about the victim's statements to her four days before the victim's death. *See id.*, slip op. at 7. We held that the trial court did not abuse its discretion in admitting the statements via the excited utterance exception to the hearsay rule. *See* Tenn. R. Evid. 803(2). Next, because the petitioner failed to cite supporting authority, we determined that the petitioner had waived his apparent claims that Crystal Murdock's testimony should have been excluded based upon the provisions of Tennessee Rules of Evidence 402, 403, and 404. *See* Tenn. R. Ct. Crim. App. 10(b). Waiver aside, however, we determined that the trial court acted within its discretion in admitting this evidence. *Kenneth MacArthur Johnson*, slip op. at 10-11.

We next rejected as waived the petitioner's claim that the trial court erred in admitting the 911 tape into evidence. *Id.*, slip op. at 11. The petitioner failed to cite relevant authority, to properly refer to the appellate record, to make a timely objection at trial, to state in the motion for new trial a specific basis for excluding the evidence, and to include in the direct appeal record the transcript of the hearing on the motion for new trial and the 911 tape itself. *Id.*, slip op. at 11-12.

We also rejected as waived the petitioner's claim that the trial court erred in not sequestering the trial jury. The petitioner failed to move the trial court for jury sequestration, to include the claim in a timely motion for new trial, and on appeal failed to cite authority to specific portions of the record.

Additionally, we rejected as waived the petitioner's direct appeal claims that he had been victimized by prosecutorial misconduct. Specifically, he claimed that the state had prejudiced him by not disclosing in discovery that it had performed gunshot residue tests on the victim's hands and that in final argument the state argued outside the record by positing that the defendant lingered around his dying wife as a means of preventing her from talking about the shooting. Neither claim was benefitted by a contemporaneous objection, and neither claim was timely presented in the motion for new trial. *Id.*, slip op. at 14.

We pointed out in our earlier opinion that an amendment to the motion for new trial was belatedly filed. The hearing on the motion for new trial was held on December 8, 1998. The written amendment was filed on December 17, 1998. *See* Tenn. R. Crim. P. 33(b) (amendments to motion for new trial shall be allowed "liberally until the day of the hearing of the motion for new trial"). The written amendment added the claims that (1) the trial court erred in not sequestering the "witnesses,"[2] (2) the failure of the state to disclose the testing of the victim's hands for gunshot residue, and (3) the state's final argument that the defendant tried to prevent the victim from talking to the police was not based on evidence admitted at trial. In his brief in the direct appeal of the conviction, the petitioner asserted that he had orally raised these claims made during the December 8, 1998 hearing and that the trial court had overruled all claims for a new trial, including the newly added claims. The record, however, contained no transcript of the hearing on the motion for new trial, and the order overruling the motion did not articulate whether the motion and ruling embraced the claims added by amendment. *See Kenneth MacArthur Johnson*, slip op. at 12-13, n.7. To the extent that our disposition via waiver of the three claims for a new trial raised by "amendment" were based upon failure to timely present the claims in a motion for new trial, we were referring to the apparently tardy amendment to the motion.[3]

## C. The Post-Conviction Hearing.

At the post-conviction hearing, the petitioner testified that his original attorney, Heiskell Winstead, had a reputation as being an experienced, effective criminal trial attorney. Mr. Winstead, however, withdrew from the case several months after the preliminary hearing because of his election to the post of Hawkins County Executive. Mr. Winstead proposed that John Anderson, a lawyer in Mr. Winstead's office, take over the case, and the petitioner agreed. The petitioner thereafter met with Mr. Anderson every week or two.

The petitioner testified that he told Mr. Anderson that the petitioner's son, Allen, and Allen's girlfriend, Michelle Webb, had heard Crystal Murdock's threat to retaliate against the petitioner because of the petitioner's role in precipitating Crystal's and Allen's divorce. The petitioner stated that counsel neither interviewed Michelle Webb nor subpoenaed her to testify at trial.

The petitioner testified that the redacted version of the 911 tape "implied that [he] didn't try to help [his] wife get medical assistance." During an exchange with the trial court concerning the petitioner's complaint about the 911 tape, however, post-conviction counsel raised a different concern. He explained that the court removed a tape segment that spanned a few minutes in real time. This segment covered the time between the petitioner laying down the phone and the petitioner's son taking it and conversing with the 911 operator. Apparently, the trial court denied

---

[2]Apparently, the petitioner intended to refer to the lack of sequestration of the jury.

[3]The transcript of the hearing on the motion for new trial was exhibited to the post-conviction evidentiary hearing. The transcript reflects that counsel orally raised the three "amended" grounds during the December 8 argument, and the trial court denied these and all other grounds.

-4-

the petitioner's pretrial oral motion to exclude the 911 recording; however, the court redacted the tape by removing the segment spanning the time when the Johnson phone was idle, because this segment revealed a conversation between 911 operators who discussed the call and made remarks about the caller shooting his wife. The petitioner now complains that the redacted tape played to the jury revealed no lapse of time between the petitioner leaving the phone and his son picking it up. Post-conviction counsel stated that the tape presented in this form belied the petitioner's claim that, before Allen took the phone, Allen overheard the petitioner and the victim remarking that the petitioner did not mean to shoot the victim.

The petitioner further testified that he told Mr. Anderson that he had witnesses who could testify that Deborah Heck and the victim were not friends and that the victim was not speaking to Heck. The petitioner stated that Mr. Anderson failed to interview and subpoena any of these witnesses.

Allen Johnson testified at the post-conviction hearing that several months after his mother's death, he was involved in a court action with his ex-wife, Crystal Murdock, concerning their minor child. Following this court action, Ms. Murdock threatened to do whatever she could to see that the petitioner went to jail because of his role in breaking up Crystal's marriage to Allen.[4] Allen Johnson testified that both he and his girlfriend, Michelle Webb, heard the threat.

At the post-conviction hearing, the petitioner introduced the 911 tape and the transcript of the December 8, 1998 hearing on the motion for new trial. The transcript of that hearing reflects that Mr. Anderson orally "amended" the motion for new trial by adding the issues of jury sequestration, the failure of discovery to reveal the gunshot residue test on the victim's hands, and the state's argument that the petitioner believes went beyond the evidence in the case. The trial court overruled all claims for a new trial, including the new claims presented orally on December 8, 1998.

At the post-conviction hearing, the state called Attorneys Heiskell Winstead and John Anderson as witnesses. Mr. Winstead testified that he had acquired extensive experience in trying criminal cases, including seventeen years as district attorney general and sixteen years as a criminal defense attorney, before being elected to the post of Hawkins County Executive. The election caused him to withdraw as counsel of record for the defendant, but the petitioner agreed for Mr. Winstead's associate, Mr. Anderson, to assume responsibilities for the case. Mr. Winstead testified that Mr. Anderson was himself an experienced criminal defense lawyer. Mr. Winstead met extensively with the petitioner and Mr. Anderson and helped them prepare pretrial motions and prepare the case for trial. During jury selection and the remainder of the trial, Mr. Winstead sat behind the defense table to consult with and advise Mr. Anderson. Mr. Winstead testified that before trial he referred the petitioner to mental health counseling because the petitioner struggled emotionally in the wake of his wife's death. Mr. Winstead testified essentially that the petitioner presented no mental health issues of incompetency, insanity or diminished capacity that existed at the time of the shooting. He

---

[4]According to Allen Johnson, the "break-up" was precipitated by the petitioner discovering Ms. Murdock "with another man."

stated that the defense learned about three weeks before trial that the TBI had performed gunshot residue tests on the victim.

John Anderson testified that he had thirteen years of trial experience and had worked on a number of murder cases. He stated that he filed a pretrial motion to exclude the 911 tape but that, in lieu of granting the motion, the trial court redacted the tape to remove the 911 operators' conversation. Mr. Anderson indicated that he could not foresee that the removal of the "gap" in the tape would be exploited by the state during closing argument.[5] At the time of redaction, he agreed that removal of the 911 operators' conversation would benefit the petitioner. He believed that the petitioner would be prejudiced by the jury hearing this conversation.

Mr. Anderson further testified that he knew about Crystal Murdock's motive to implicate the petitioner in the victim's death and believed that he had exploited this motive during cross-examination. He did not call Michelle Webb, Allen Johnson's girlfriend, as a witness to Ms. Murdock's threats. After interviewing her, he thought her testimony could be disingenuous, and after discussing the issue with Mr. Winstead, he elected not to present to the jury a "swearing contest" between Allen Johnson's ex-wife and his girlfriend.

According to Mr. Anderson, the written amendment to the motion for new trial inadvertently sought a sequestration of "witnesses." The intended claim was for sequestration of the jury, and sequestration of the jury was argued before the court as a basis for new trial on December 8, 1998. Mr. Anderson discerned that when the jury returned to the courtroom following their deliberations in the case, "it was like a temperature change." He felt that perhaps the jury had been externally influenced, but he acknowledged that "it was nothing you could put your finger on."

Concerning the gunshot residue test, Mr. Anderson, testifying conversely to Mr. Winstead, said that the defense had no knowledge prior to trial that residue from the victim's hands had been tested. At trial, the TBI agent testified that the test on both the defendant's and the victim's hands were inconclusive and that the chemical levels on both sets of hands were "identical." Because he wanted to establish that the victim had both hands on the gun, Mr. Anderson "didn't object to the testimony because, basically, we were using the witness's testimony to our advantage at the point in time when he said that the results were identical." Mr. Anderson believed that the agent's testimony helped more than it hurt the defense.

Regarding the 911 tape, Mr. Anderson acknowledged that, in retrospect, the absence of a lapse of real time on the tape could have prejudiced the defendant; however, he did not remember whether the state actually exploited this issue in its final argument.

Mr. Anderson opted not to seek expert assistance in the case. Specifically, he saw no basis for obtaining a psychological or a "memory" expert. He declined to put the petitioner's

---

[5]The direct appeal record does not contain both of the state's final arguments. We are at a loss to discern when or how the state exploited the "gap" in the tape.

character into evidence via character witnesses because he believed that the state was prepared to rebut with negative character testimony.

Mr. Anderson did not recall if the petitioner's work records reflected that the petitioner was at work on the evening before the victim made her morning phone call to Ms. Heck.

### D. The Post-conviction Court's Findings.

At the conclusion of the proof, the lower court made extensive findings. It found that both Mr. Winstead and Mr. Anderson were experienced, competent criminal defense attorneys. The judge stated that he elected at trial to redact the 911 tape in order to purge the operators' conversation, but he found that it was "pure[] speculation" to say that omitting the time frame discredited the petitioner's claim about his conversation with the victim. The post-conviction court further found that the state's trial witnesses were fully cross-examined and that there was no indication that the petitioner had psychological problems that would serve as a basis for psychological testing or expert testimony. With regard to the allegation that the petitioner may have been working on the night that he made the threats against the victim that were reported by her to Ms. Heck, the post-conviction court noted that no employment records were offered in the post-conviction hearing to establish that the petitioner was away from home on that night. The lower court further determined that the issues on which appellate review was waived "don't matter." Specifically, the court held that there was no basis for jury sequestration; the court stressed that it would not have granted a motion to sequester the jury. Furthermore, the court determined that, if any prosecutorial misconduct occurred, the petitioner was not prejudiced by it. In sum, the court determined that the petitioner had received the effective assistance of counsel and denied post-conviction relief.

## II. Governing Law.

### A. Post-conviction Relief.

The post-conviction petitioner bears the burden of proving his or her allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f) (1997). On appeal, the appellate court accords to the trial court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App 1997). By contrast the trial court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

### b. Ineffective Assistance of Counsel.

In this case, the petitioner argues that he was hampered by the ineffective assistance of trial and appellate counsel.

The post-conviction court concluded that the petitioner's trial counsel provided constitutionally effective representation. Accordingly, this court must determine whether the evidence preponderates against the post-conviction court's findings (1) that counsel's performance was within the range of competence demanded of attorneys in criminal cases, *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and (2) that any deficient performance did not prejudice the petitioner, *Strickland v. Washington*, 466 U.S. 668, 687-79, 104 S.Ct. 2052, 2064-2069 (1984); *see also Powers v. State*, 942 S.W.2d 551, 557 (Tenn. Crim. App. 1996). Courts need not address these components in any particular order or even address both if the petitioner fails to meet his burden with respect to one. *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1998).

In evaluating counsel's performance, this court should not examine every allegedly deficient act or omission in isolation, but rather in the context of the case as a whole. *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The primary concern of the court should be the fundamental fairness of the proceeding whose result is being challenged. *Id.* (citation omitted). Therefore, this court should not second-guess tactical and strategic decisions by defense counsel. *Henley*, 960 S.W.2d at 579. Instead, this court must reconstruct the circumstances of counsel's challenged conduct and evaluate the conduct from counsel's perspective at the time. *Id.; see also Irick v. State*, 973 S.W.2d 643, 652 (Tenn. Crim. App. 1998).

However, this court's deference to counsel's tactical decisions will depend upon counsel's adequate investigation of defense options. *Burger v. Kemp*, 483 U.S. 776, 794, 107 S. Ct. 3114, 3126 (1987). That having been said, one court has observed:

> Judges wisely defer to *true* tactical choices - that is to say, to choices between alternatives that each have the potential for both benefit and loss. We are in a poor position to judge, on the cold record, the quality of such a choice, made as it is in the fine-grained texture and nuance of the particular proceeding.

*Profit v. Waldron*, 831 F.2d 1245, 1249 (5th Cir. 1987) (emphasis added). Accordingly, assuming adequate investigation, the fact that a strategy or tactic failed or hurt the defense does not alone support the claim of ineffective assistance of counsel. *Jerry Whiteside Dickerson v. State*, No. 03C01-9710-CR-00472 (Tenn. Crim. App., Knoxville, Sept. 16, 1998), *perm. app. denied* (Tenn. 1999); *Thompson v. State*, 958 S.W.2d 156, 165 (Tenn. Crim. App. 1997).

In sum, a defendant is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). Accordingly, "in considering claims of ineffective assistance of counsel, '[w]e address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger*, 483 U.S. at 794, 107 S.Ct. at 3126.

Even if the petitioner establishes that counsel's performance was not within the requisite range of competence, he must also demonstrate a reasonable probability that the result of

the proceeding would have been different but for the defective performance of counsel. *Henley*, 960 S.W.2d at 580. The prejudice prong of the *Strickland* test "continues to be the primary hurdle to be cleared in Sixth Amendment assistance of counsel cases," but "[t]his obstacle . . . is not insurmountable." *Profit*, 831 F.2d at 1251. A court

> "must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect . . . ."

*Henley*, 960 S.W.2d at 580 (quoting *Strickland*, 466 U.S. at 696-97, 104 S. Ct. at 2069).

"When a petitioner contends that trial counsel failed to discover, interview, or present witnesses . . . , these witnesses should be presented by the [post-conviction] petitioner at the evidentiary hearing." *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App.1990). If he fails to do so, he generally fails to establish ineffective assistance of counsel. *Id.* The post-conviction court may not speculate "on the question of . . . what a witness's testimony might have been if introduced" at trial. *Id.*; *see also Wade v. State*, 914 S.W.2d 97, 102 (Tenn. Crim. App. 1995).

### III. Disposition of Appellate Post-conviction Issues.

#### A. Trial Counsel's Failure to Prepare the Case.

On appeal, the petitioner limits his claims of trial counsel's lack of preparation to the following issues: (1) the failure to interview possible defense witnesses; (2) the failure to file pretrial motions to address the Tennessee Rule of Evidence 404(b) aspect of Crystal Murdock's testimony and to request state funds for psychiatric expert services; (3) Mr. Winstead's inattention to the petitioner's defense brought about by his involvement in a political campaign; and (4) the failure of counsel to meet with and advise the petitioner. We will address these issues in turn.

The petitioner's complaints on appeal about counsel's failure to interview witnesses emanate from the petitioner's beliefs that Mr. Anderson neglected to interview Michelle Webb, a prospective defense witness, that he failed to call witnesses to impeach by fact contradiction Ms. Heck's testimony, that he failed to use character witness, and that he should have consulted with the petitioner's post-shooting psychiatric therapist, as well as other potential psychiatric witnesses.

The record reflects, however, that Mr. Anderson interviewed Michelle Webb and discussed the possible use of her testimony with Mr. Winstead. Mr. Anderson articulated tactical reasons for not calling Ms. Webb and expressed his misgivings about the profit in her prospective testimony. The post-conviction court apparently accredited Mr. Anderson's account of his handling of the issue, and we note that the petitioner failed to present Ms. Webb in the post-conviction

proceeding. We cannot speculate how she may have actually testified at trial, and for this reason, we have no basis to discredit Mr. Anderson's asserted misgivings about her testimony. *See Thompson v. State*, 958 S.W.2d 156, 163 (Tenn. Crim. App. 1997); *Wade*, 914 S.W.2d at 102. The petitioner has shown neither that counsel deficiently performed in not presenting Ms. Webb as a witness nor that the petitioner was prejudiced by the omission. *See Thompson*, 958 S.W.2d at 164.

Likewise, the petitioner did not present at the evidentiary hearing the witnesses he claims could have contradicted Ms. Heck's claim of friendship with the victim and did not present any persons who could have served as character witnesses at trial. Thus, he has failed to show ineffective assistance in trial counsel's not using these witnesses at trial. *Id.*

The petitioner's claims that counsel should have consulted the petitioner's treating therapist and other potential psychiatric witnesses are also unavailing. The trial and post-conviction records are simply devoid of any proof that psychiatric evidence, if admissible, would have been helpful to the defense. The only references in the evidence to the petitioner's mental health were descriptions of his receiving outpatient treatment to assist him in coping with his wife's death. Mr. Winstead referred the petitioner for this treatment because he recognized that the petitioner was struggling emotionally. Mr. Winstead detected no basis for conferring with the therapist or seeking the help of any other consulting mental health expert. Moreover, the petitioner failed to present any proof at the post-conviction hearing that psychiatric testimony would have been useful. *See Id.* at 163-64.

Next, the petitioner claims that trial counsel failed to file pretrial motions to seek state funding for expert psychiatric services and to challenge via evidence Rule 404(b) Crystal Murdock's testimony. The first issue is related to the subject of the preceding paragraph. As we noted, the petitioner failed to establish any basis for a psychiatric evaluation or expert testimony. A criminal defendant cannot claim entitlement to funding for such expert services unless he is indigent and shows a "particularized need." *See* Tenn. R. Sup. Ct. 13, § 6 (in cases in which the defendant *is entitled to appointed counsel*, court authorized to grant state funds for expert services if "necessary to ensure that the constitutional rights of the defendant are properly protected")*; State v. Scott*, 33 S.W.3d 746, 753 (Tenn. 2000) ("The obligation of a court to afford an *indigent* defendant the benefit of expert assistance does not arise unless the defendant makes a threshold showing of a 'particularized need' for the expert assistance.") (emphasis added); *Ruff v. State*, 978 S.W.2d 95, 101 (Tenn. 1998) (before *indigent* criminal defendant may obtain state funds for a psychiatric expert, he must demonstrate a particularized need). Having failed to establish these predicates, the petitioner has not shown that his trial counsel deficiently performed by not seeking funding for expert services.

We now review the claim that trial counsel was ineffective in failing to move pretrial to exclude the testimony of Crystal Murdock via Tennessee Rule of Evidence 404(b). The state called Ms. Murdock to testify about the 1996 incident in which she witnessed the petitioner threaten the victim with a gun. Contrary to the petitioner's assertion in his brief that Mr. Anderson filed no motion to exclude this testimony, the transcript of the trial reflects that, prior to Ms. Murdock

testifying, Mr. Anderson objected in a side-bar conference out of the hearing of the jury that the testimony would implicate the petitioner in "a prior bad act" and should be disallowed. The trial court overruled the objection. In *Kenneth MacArthur Johnson*, we concluded that the trial court acted within its discretion in overruling the petitioner's motion to exclude Ms. Murdock's testimony. Inasmuch as the petitioner raised this issue at trial and we concluded on direct appeal that the trial court did not act erroneously, the petitioner has not been prejudiced by Mr. Anderson's appellate defaults which could have served as a basis for merely rejecting this direct appellate claim on the basis of waiver. Simply put, the lack of merit in the underlying claim equates to a lack of prejudice for purposes of securing post-conviction relief.

The petitioner's last issues of deficient trial preparations are the related claims that both lawyers neglected to meet with and advise the petitioner and that Mr. Winstead, because of political distractions, was inattentive to the defense while he served as counsel of record. The petitioner, in testifying at the post-conviction hearing, did nothing more than make these charges. He failed to articulate specific ways in which counsels' advice and consultations were deficient. He admitted that he met regularly with counsel, and the lawyers' post-conviction testimonies evince frequent pretrial communications and meetings with the petitioner. Thus, the petitioner has failed to show by clear and convincing evidence that his attorneys failed to attend to the petitioner's case, whether or not the perceived reason for the alleged inattention was the advancement of Mr. Winstead's political career.

### B. Trial Counsel's Failure to Object to Playing a Tape of a 911 Call to the Jury and Appellate Counsel's Failure to Take Steps to Assure Appellate Review of the 911 Tape Issue.

First, we are constrained to say that trial counsel did object to the use of the 911 tape. The record reflects that he made an oral, pretrial motion to exclude the tape, and the trial court held a hearing. Thus, the petitioner's post-conviction claim that no objection was made is not supported in the record, and therefore, this claim fails. That said, we acknowledge that the pretrial motion was inarticulate in stating a basis for exclusion other than that the petitioner would be prejudiced by the evidence, but in the post-conviction proceeding, the petitioner still has failed to advance or theorize a basis for exclusion. We conclude that the petitioner has failed to carry his post-conviction burden of proof on the issue. For that reason, the post-conviction court properly denied this post-conviction claim as presented.

The petitioner, however, presents the 911 tape issue again in the portion of his brief that addresses the ineffective assistance of appellate counsel. As we have noted in the portion of this opinion describing this court's disposition of the petitioner's direct appeal, the petitioner waived appellate review of the 911 tape issue because of various shortcomings of appellate counsel. *See Kenneth MacArthur Johnson*, slip. at 11-12. Predictably, the petitioner asserts in his post-conviction petition that the waiver amounts to ineffective assistance of appellate counsel; however, he articulates no reason why an appellate review of the merits of the 911 tape issue would have resulted

in a reversal other than to assert that the use of the redacted tape with the time frame missing gave the jury an inaccurate impression that there was no time for the defendant and the victim to discuss the unintentional nature of the shooting. This was not the nature of the petitioner's trial and direct appeal claim about the 911 tape. *See id.*, slip op. at 11 ("The defendant claims that the tape's emotional impact was so prejudicial as to outweigh its probative effect."). Thus, the post-conviction issue actually presented is that counsel failed to identify and present the *time-gap* issue to *both* the trial and the appellate courts.

In his post-conviction hearing testimony, Mr. Anderson acknowledged that the failure to inform the jury that a segment of time was missing from the tape may have prejudiced the petitioner; however, he also testified that he believed that the expurgation of the 911 operators' conversation was so vitally important that redaction was an obvious advantage. That aside, he did not foresee the possible effect of the loss of the time segment.

The petitioner claims that he was prejudiced because the loss of the time interval belied the defense claim that, during the interlude between the petitioner and Allen Johnson talking sequentially with the 911 operator, the petitioner told the victim – and the victim acknowledged – that the shooting was unintentional. The post-conviction court concluded that it was "pure[] speculation" to say that the jury derived this meaning from the use of the redacted tape. To determine whether the redacted tape reasonably resulted in the inference asserted by the petitioner, we have examined Allen Johnson's and the petitioner's trial testimony. Allen Johnson testified that when he heard the shot and his father called him into the house, he saw the victim sitting on the couch. The victim said to Allen, "He shot me." Allen Johnson then testified, "And dad grabbed me and took me back in the kitchen back there to a phone. And I got on the phone and started talking to 911." Allen Johnson testified that, afterward, the petitioner "brought [him] the cordless phone, . . . and then [Allen Johnson] went back into the living room," where the victim was saying she was in pain and was about to die. Then, with Allen Johnson holding the cordless phone and standing on the other side of the living room from his parents, the petitioner said, "Chub, I love you, and I didn't mean [to] do it." The victim responded, "I know you didn't." On cross-examination, Allen Johnson testified that he was *talking on the telephone to the 911 operator* when the victim told the petitioner that she knew he did not mean to shoot her. The petitioner testified that he did not remember the events that transpired after the gun discharged. Thus, the sole account of the discussion between the petitioner and the victim was rendered by Allen Johnson, and he testified that the discussion occurred, not in the interval between the petitioner and himself talking to 911, but *after* he assumed control of the conversation with the 911 operator. With this proof in evidence, there is no palpable inference from the redacted tape that there was no time for this conversation between the petitioner and the victim.

Thus, we agree with the trial court that the claimed prejudice is speculative, and moreover, the danger of prejudice was not foreseeable. Not only has no prejudice been shown, but the petitioner has failed to establish by clear and convincing evidence that counsel deficiently performed by not raising the "time gap" issue at trial or on appeal.

-12-

C.  The Failure to Object to the TBI Agent's Testimony.

The petitioner claims Mr. Anderson ineffectively assisted him by not objecting when the state's TBI witness testified that he had performed gunshot residue tests on samples from the victim's hands.  The state's prior discovery response indicated that residue from the victim's hands had not been tested.  The petitioner posits that counsel should have objected to this testimony concerning the test until he had reviewed the results of the test.  Mr. Anderson, however, testified that, although he was surprised by the news that the test had been performed, he was happy for the jury to know that the residue on the defendant's hands was "identical" to that on the victim's hands. He believed this information advanced the defense theory that the victim put her hands on the gun and caused it to discharge.

Even though Mr. Anderson's failure to object cannot be lauded as a chosen trial tactic in view of the fact that he apparently did not know the results of the test when he allowed the agent to testify unimpeded to the results, we must conclude that the petitioner has shown no prejudice as a result of the failure to object and to review the test results prior to disclosure to the jury.  The test results were consistent with the petitioner's theory of accidental shooting, and we agree with Mr. Anderson's assessment that the evidence helped the petitioner more than it hurt him.  Hence, on this issue, the prejudice prong of ineffective assistance of counsel has not been satisfied.  Moreover, the petitioner offered no proof in the evidentiary hearing that further analysis of the residue sampling would have been exculpatory.

D.  The Failure to Object to, and Preserve for Appeal, Instances of
Prosecutorial Misconduct.

The petitioner claims that he is aggrieved of ineffective assistance of counsel because trial counsel failed to object to two incidents of prosecutorial misconduct and otherwise failed to take steps to assure appellate review of the misconduct issues.

Initially, we note that "[t]he test to be applied in reviewing a claim of prosecutorial misconduct is 'whether the improper conduct could have affected the verdict to the prejudice of the defendant.'" *Brimmer v. State*, 29 S.W.3d 497, 527 (Tenn. 1998) (quoting *Harrington v. State*, 215 Tenn. 338, 339, 385 S.W.2d 758, 759 (Tenn. 1965)).

The first issue is counsel's failure to object to the TBI agent's testimony about the gunshot residue test on the victim's hands and his failure to construct a record that would supply this court with a basis for reviewing the issue on direct appeal. As we have concluded in the preceding section, however, the petitioner has demonstrated no prejudice from counsel's failure to present this issue to the trial court or to this court. In this appeal, the petitioner argues that, if counsel had attempted to forestall the trial when the report was disclosed, he could have obtained independent testing of the gunshot residue.  He had the burden, however, of establishing his post-conviction claims by clear and convincing evidence, and as we have noted, he failed to show at the evidentiary hearing what an independent test would have revealed.

We therefore discern no ineffective assistance of counsel despite the issue of "surprise" not having been reviewed by any court. In other words, because the post-conviction petitioner has failed to demonstrate prejudice, he has established ineffective assistance of neither trial nor appellate counsel.

Next, the petitioner claims that his trial and appellate counsel failed to preserve the issue of prosecutorial misconduct concerning the state's closing argument that the petitioner obstructed the call for medical help for the victim, that the victim herself called 911 and went to retrieve a towel to stem the bleeding, and that the petitioner shielded the victim from emergency or law enforcement personnel as a means of preventing her from describing the shooting. The petitioner asserts that there is no evidence to support these claims.

Our courts have afforded wide latitude to counsel in arguing cases to the jury. *State v. Cribbs*, 967 S.W.2d 773, 783 (Tenn. 1998). Although arguments must be temperate, relevant to the material issues, and predicated on the evidence, *State v. Cauthern*, 967 S.W.2d 726, 736 (Tenn. 1998), both the prosecution and the defense must be allowed to argue not only the facts in evidence, but also any reasonable inferences therefrom. *Russell v. State*, 532 S.W.2d 268, 271 (Tenn. 1976).

We conclude that the argument bespoke reasonable inferences from the evidence. The photographs introduced at trial showed blood drops on the floor through the house and on a light switch near a door leading into or toward the bathroom. The 911 tape revealed that the petitioner could not or would not recite his address for the 911 operator, even though he was able to recite it on cross-examination.

Additionally, the petitioner himself helped to foster the prosecutor's argument when, during cross-examination, he repeatedly stated that he did not remember the events that followed the shooting, including whether the victim went "bleeding from the couch, where she was shot into the bathroom, turning on the light, finding something to put on her to stop the bleeding." When asked if he "didn't help her," the petitioner testified, "I don't know." The prosecutor said, "You didn't help her. You didn't even call 911 right away, did you?" The petitioner replied, "I don't know." The petitioner also testified that he did not remember whether he had stayed close to the victim when the medical team arrived in order to prevent her from telling what happened. From this record, we cannot say that the prosecutor had no basis for his argument.

Because in our view, no prosecutorial misconduct occurred during the state's final argument, the claims of ineffective assistance of both trial and appellate counsel fail.[6]

---

[6]We must also comment that the record on the direct appeal contains a transcript of the prosecutor's final argument, but it omits his opening argument and defense counsel's argument. We have no way of knowing whether the complained of comments during the state's final argument might in some way be responsive to the defense's preceding argument. In order to assure full appellate review, the better approach would be for the appellant to present a transcript of all of the arguments before the jury.

E.  The Failure to Raise Certain Issues in a Timely Motion for New Trial and to Otherwise Preserve Issues for Appellate Review.

In section I(B) of this opinion we recounted that, in *Kenneth MacArthur Johnson*, we cited the appellant's waiver as a basis for rejecting the claims that the trial court erred in admitting the 911 tape, that the trial court erred in not sequestering the jury, and that the state was guilty of trial misconduct through using the TBI gunshot residue report and arguing outside the evidence.  *See Kenneth MacArthur Johnson*, slip op. at 5.  We also cited waiver as an alternative basis for rejecting the challenge to Crystal Murdock's testimony.  *See id.*, slip op. at 4.  We also noted in section I(B) that one of the bases for appellate review waiver was the apparently belated filing of amendments to the motion for new trial which raised the sequestration and prosecutorial misconduct issues. *See id.*, slip op. at 5-6.

In the foregoing subsections of this section III, we have disposed of the claims of ineffective assistance of appellate counsel when we addressed the performance of trial counsel on the specific issues of the admissibility of Crystal Murdock's testimony and of the 911 tape and the issue of prosecutorial misconduct.  We have yet to address the petitioner's claim that Mr. Anderson, as trial and appellate counsel, failed to raise the issue of sequestration in a timely amendment to the motion for new trial and, therefore, failed to preserve it for appellate review.  We address that issue now.

Tennessee Code Annotated section 40-18-116 provides:

In all criminal prosecutions, except those in which a death sentence may be rendered, jurors shall only be sequestered on the judge's motion or on the motion of the counsel for the defendant or the district attorney general, which shall prohibit the jurors from separating at times when they are not engaged upon the actual trial or deliberation of the case.  The party making the motion to sequester shall be unknown to the jury.

Tenn. Code Ann. § 40-18-116 (1997).  The statute reflects a right to a sequestered jury that is grounded in Article I, sections 6, 8, and 9 of the state constitution.  *Jones v. State*, 915 S.W.2d 1, 2 (Tenn. Crim. App. 1995); *Long v. State,* 132 Tenn. 649, 179 S.W. 315 (1915).  As the statute indicates, however, the right may be waived by the defendant who fails to move for sequestration. *See  Jones*, 915 S.W.2d at 2 (failing to raise sequestration issue at trial equates to waiver).

In ruling on this issue following the post-conviction evidentiary hearing, the trial judge indicated that he would not have granted a defense motion for sequestration because there was no issue of notoriety or other basis for sequestering the jury.  We need not decide whether the claim to a sequestered jury is absolute and does not emanate from any facts or circumstances that would justify the sequestration; our review of the record of the trial indicates that the petitioner took no

-15-

steps to have the jury sequestered. Thus, he had waived the issue long before he began drafting a motion for a new trial.

Of course, that determination does not end our inquiry. The petitioner asserts that the failure to present the issue of sequestration and preserve it for appellate review is ineffective assistance of counsel. Assuming *arguendo* that the failure to move for sequestration is deficient performance of trial counsel, we nevertheless discern no prejudice to the petitioner. At the post-conviction evidentiary hearing, Mr. Anderson testified that he noticed a "temperature change" in the jury when they returned to the courtroom after their deliberation, as if they "had outside influence." He was unable, however, to articulate any basis for this perception, and moreover, the petitioner has shown neither an instance of outside influence nor any other basis for concluding that he was prejudiced at trial because the jury was not sequestered. Thus, the petitioner has failed to establish the prejudice prong of ineffective assistance of counsel.

Having concluded that the petitioner has failed to establish prejudice as an element of his claims of ineffective assistance of counsel, we need not determine whether trial counsel effectively amended the motion for new trial by tendering oral amendments during his argument on the motion and reducing the same to writing a few days later.

## IV. Conclusion.

Having reviewed all of the petitioner's claims for post-conviction relief and finding that the record supports the trial court's denial of his claims, we affirm the judgment of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE